# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LISA VAN NORMAN,

    *Plaintiff,*

vs.

NANCY A. BERRYHILL,[1] Acting
Commissioner of Social Security
Administration,

    Defendant.

Case No. 16-2209-EFM

## MEMORANDUM AND ORDER

Plaintiff Lisa Van Norman seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. Van Norman claims that the Commissioner's decision should be reversed because of the Administrative Law Judge's ("ALJ's") errors in assessing her credibility, setting forth her functional limitations in her residual functional capacity ("RFC"), reviewing the opinions of her treating physician, and considering all of her impairments. Because it is unclear whether the ALJ considered all of Van

---

[1] On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Norman's medically determinable impairments in assessing her RFC, the Court reverses the Commissioner's decision and remands for further consideration.

## I. Factual and Procedural Background

On April 29, 2013, Van Norman filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2009, due to back pain. Van Norman was 50 years old as of her date last insured. Before her alleged onset date, Van Norman worked at a gas station, where she ran the cash register and performed other various duties. After her alleged onset date, Van Norman continued to work part-time—first at the gas station, then as a pizza delivery driver, and finally as a Subway employee. Van Norman's part-time earnings, however, have not reached the presumptive level for substantial gainful activity.

The agency denied Van Norman's application both initially and upon reconsideration. She subsequently requested a hearing before an ALJ. At this point, Van Norman also began alleging disability due to chronic obstructive pulmonary disease ("COPD").

ALJ Robert Burbank held an administrative hearing on August 26, 2014, at which Van Norman was represented by counsel. During the hearing, she testified about her previous work, her medical conditions, and her daily living activities. The ALJ also heard testimony from a vocational expert who testified regarding work that Van Norman could perform at the light exertional level based on Van Norman's age, education, and work history.

On October 20, 2014, the ALJ issued his decision finding that Van Norman had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Van Norman suffered from the severe impairments of degenerative disc disease, status-post lumbar surgery in 2004, and COPD. However, the ALJ found that Van Norman does not have an

impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Van Norman had the residual functioning capacity ("RFC") "to perform light work . . . except she cannot climb ropes, ladders, or scaffolds and she should avoid concentrated exposure to extreme cold, vibrations and fumes, gases and other allergens." The ALJ then determined that Van Norman is unable to perform any past relevant work but that considering Van Norman's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Thus, the ALJ concluded that Van Norman has not been under a disability from September 30, 2013, through the date of his decision.

Given this unfavorable result, Van Norman sought reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied review on September 12, 2015. Thus, the ALJ's October 2014 decision became the final decision of the Commissioner. On April 1, 2016, Van Norman filed a Complaint in this Court seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Van Norman's exhaustion of all administrative remedies, her claim is now ripe for review before this Court.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore

---

[2] 42 U.S.C. § 405(g).

determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

---

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

---

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

### III. Analysis

Van Norman contends that the ALJ's decision denying benefits should be reversed because his RFC assessment is not supported by substantial evidence in the record. Specifically, Van Norman argues that the ALJ erred (1) in assessing her credibility; (2) by failing to state her RFC on a "function-by-function" basis; (3) by not properly analyzing the opinion of her treating physician, Dr. Seto; and (4) by not considering all of her impairments in the RFC assessment. The Court will address each of these arguments below.

**A.      Credibility**

In determining Van Norman's RFC, the ALJ assessed the credibility of her subjective complaints. The ALJ concluded that Van Norman's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that Van Norman's statements concerning the intensity, persistence, and limiting effect of these symptoms are not entirely credible. Van Norman argues that this conclusion is not supported by substantial evidence in the record.

An ALJ's credibility determination is generally treated as binding on review.[15] "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[16] The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[17] However, notwithstanding the deference generally given to an ALJ's

---

[15] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[16] *Wilson*, 602 F.3d at 1144 (quoting *Diaz v. Sec. Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[17] *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

credibility determination, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[18]

In evaluating a disability claim based on nonexertional symptoms, including pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[19] If so, the ALJ must consider the relationship between the impairment and the alleged nonexertional limitation.[20] If a loose nexus exists, the ALJ must then consider all the evidence, both objective and subjective, in determining whether a claimant's limitation is disabling.[21] Factors that may be relevant in assessing the claimant's testimony include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[22]

A review of the ALJ's decision in this case reveals that the ALJ correctly assessed Van Norman's credibility. The ALJ based his decision on specific factors including the medical evidence in the record, Van Norman's continued smoking, her activities of daily living, and her infrequent use of pain medication. Van Norman has not shown that the ALJ's assessment lacks substantial evidence in the record.

---

[18] *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

[19] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).

[20] *Id.* at 164.

[21] *Id.*

[22] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation marks and citation omitted).

The ALJ found that Van Norman's subjective complaints regarding both her breathing and back problems were not supported by the medical record. With regard to Van Norman's breathing problems, the record shows that pulmonary function testing showed only minimal obstructive disease. Furthermore, Van Norman's exams showed even, unlabored respirations, and lungs with clear air movement throughout. With regard to Van Norman's back problems, her examinations noted tenderness, but she routinely had normal strength and range of motion. These relatively normal findings support the ALJ's decision finding Van Norman's subjective reports not fully credible.[23]

The ALJ also observed that doctors repeatedly told Van Norman to stop smoking and that Van Norman knew her symptoms were exacerbated by smoking. But Van Norman continued to smoke and testified at the hearing that she was down to one pack per day instead of two packs per day. Van Norman claims that the ALJ cannot rely on this fact in discounting her credibility, and even if the ALJ could rely it, he erred in failing to apply the test from 20 C.F.R. § 404.1530. Under that regulation, an ALJ must consider the following factors before relying on a purported failure to follow prescribed treatment: (1) whether the treatment would restore the ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and (4) whether the refusal was without justifiable excuse.[24]

In this context, Van Norman's reliance on 20 C.F.R. § 404.1530 is misplaced. The Tenth Circuit has held that an ALJ is not required to apply the test outlined in 20 C.F.R. § 404.1530 when the ALJ is using noncompliance as a credibility factor and not as a basis to deny an

---

[23] SSR 96-7p, 1996 WL 374186, at **6-7 (July 2, 1996) (stating that an ALJ may consider objective medical evidence in evaluating credibility).

[24] 20 C.F.R. § 404.1530(a); *see also Thompson*, 987 F.2d at 1490; *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

otherwise disabled claimant benefits.[25] In this case, the ALJ is citing Van Norman's failure to stop smoking not as a basis to deny benefits but as one of the factors for discounting her credibility. Furthermore, the courts have upheld an ALJ's decision discounting a claimant's subjective complaints where the claimant continues to smoke, as long as there is an obvious connection between the claimant's impairment and her smoking.[26] As the Commissioner points out, there is an obvious connection in this case between Van Norman's smoking and breathing problems. Thus, the ALJ reasonably relied on this factor when discounting Van Norman's credibility.

The ALJ also observed that Van Norman's activities of daily living were inconsistent with her allegations. Van Norman cooks, mows the lawn, and performs other household chores. In addition, she takes care of children at home and works part-time. At the time of the hearing, Van Norman worked 16 hours per week at Subway. She testified that she could work more, but her manager would not let her because of her health issues. The ALJ noted that Van Norman's ability to work part-time is inconsistent with her allegations, such as only being able to walk half a block and needing to use a wheelchair when she shops. Van Norman takes issue with this finding, arguing that she should not be penalized for attempting to work despite her health problems. However, the Court finds such finding by the ALJ to be reasonable. Work, even part-time work, may show that a claimant is capable of more than what he or she claims.[27]

---

[25] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016); *Bales v. Colvin*, 576 F. App'x 792, 800 n.5 (10th Cir. 2014).

[26] *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008).

[27] 20 C.F.R. § 404.1571; *see also Sheperd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (finding evidence that a claimant did mechanic work even after the alleged onset of disability supported a finding of nondisability).

Overall, the ALJ conducted a proper credibility analysis. The Court will not reweigh the evidence or substitute its judgment for that of the ALJ.[28] The Court has reviewed the record and finds that substantial evidence supports the ALJ's credibility finding.

**B.      RFC Function-by-Function Analysis**

Van Norman complains that the ALJ erred by not performing a function-by-function analysis of his RFC. The ALJ found that Van Norman had the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b) except she cannot climb ropes, ladders or scaffolds and she should avoid concentrated exposure to extreme cold, vibrations, and fumes, gases and other allergens." Van Norman contends that this assessment should have also included specific findings regarding how much sitting, standing, walking, pushing, or pulling that she could do.

Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant experience of an individual's ability to do work-related activities."[29] The Ruling further states that an ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case."[30] The Ruling provides that at step four of the evaluation process, "the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."[31] In addition, a function-by-function analysis is important at step five because without it, an ALJ "may []

---

[28] *Hackett*, 395 F.3d at 1173.

[29] SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).

[30] *Id*. at *3.

[31] *Id*.

overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do."[32]

In the past, an ALJ's failure to perform a function-by-function analysis typically resulted in an automatic remand by the reviewing court for the ALJ to perform the necessary assessment. However, the Tenth Circuit's recent decision in *Hendron v. Colvin*[33] changed this procedure. In that case, the Tenth Circuit held that the ALJ's failure to perform a function-by function analysis could be harmless if the ALJ "thoroughly review[s] the medical evidence" and does not overlook a substantial limitation.[34]

In this case, the ALJ limited Van Norman to "light work." The regulatory definition of "light work" provides that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.[35]

In addition, Social Security Ruling 83-10 provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."[36] The ALJ reviewed and discussed Van Norman's testimony, medical records, function reports, and opinions of the stage agency

---

[32] *Id*. at *4.

[33] 767 F.3d 951 (10th Cir. 2014).

[34] *Id*. at 954, 957.

[35] 20 C.F.R. § 404.1567(b).

[36] SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

consultants and treating physicians and ultimately concluded that Van Norman can perform light work with certain restrictions. Van Norman has not come forward with any medical evidence showing that her impairments prevent her from working consistent with the ALJ's RFC. This lack of evidence is fatal to her claim.[37] Thus, the Court concludes that the ALJ's failure to conduct a function-by-function analysis is harmless error and does not warrant remand to the ALJ for further analysis.

C.   **Treating Physician Opinion**

Van Norman next argues that the ALJ did not properly evaluate Dr. Seto's opinion under the treating physician rule. To determine the exact weight to assign a treating source's opinion, the ALJ must follow a two-step inquiry.[38] At the first step, the ALJ must decide whether to afford the opinion controlling weight.[39] The ALJ will give controlling weight to a treating source opinion about the nature and severity of impairment only if the opinion is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial evidence in claimant's case record.[40] An opinion that is deficient in either support or consistency with other evidence is not entitled to controlling weight.[41]

---

[37] *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

[38] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[39] *Id.*

[40] 20 C.F.R. § 404.1527(c).

[41] *Krauser*, 638 F.3d at 1330.

If the treating source opinion is not given controlling weight, the inquiry does not end.[42] A treating source opinion is still entitled to deference and must be evaluated according to the factors provided in 20 C.F.R. § 404.1527.[43] These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[44]

Though the ALJ is not required to discuss all six of these regulatory factors,[45] the ALJ must "give good reasons, tied to the factors specified in the cited regulations . . . for the weight assigned" a treating source opinion.[46] This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight [the ALJ] gave to the treating source's medical opinion and the reason for that weight."[47] And if the ALJ rejects a treating source's opinion, "he must articulate specific, legitimate reasons for his decision."[48]

Dr. Seto filled out a Medical Source Statement regarding Van Norman's capabilities in February 2014. In that Statement, he stated that Van Norman could stand/walk less than two hours in an eight-hour work day and sit for only four hours in an eight-hour workday. He also

---

[42] *Id.*

[43] *Id.* at 1330-31.

[44] *Id.* at 1331; *see also* 20 C.F.R. § 404.1527(c)(1)–(6).

[45] *Oldham*, 509 F.3d at 1258.

[46] *Krauser*, 638 F.3d at 1330 (citation omitted).

[47] *Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)) (internal quotation marks omitted).

[48] *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quotation omitted).

stated that Van Norman would be expected to miss more than four days per month if she was working full time. Dr. Seto further stated that his description of Van Norman's symptoms and limitations began in December 2013.

Van Norman takes issue with the ALJ's treatment of Dr. Seto's opinion, arguing that the ALJ erred by not stating the specific weight he gave it and that the ALJ's apparent rejection of his opinion was not supported by good reasons. The Court recognizes that the ALJ did not specify that he did not give Dr. Seto's opinion controlling weight. But, this is not a case in which the ALJ's reasoning and conclusions cannot be ascertained. The ALJ discussed Dr. Seto's opinions and then expressly stated that the opinions were not supported by the medical record. Implicit in this analysis is the conclusion that the ALJ did not give Dr. Seto's opinions controlling weight. The Tenth Circuit has recently upheld several decisions where the ALJ failed to expressly state whether he was giving controlling weight but provided enough analysis for the circuit to conclude that the ALJ considered the medical evidence in accordance with the applicable law.[49] The Court would have preferred the ALJ to specifically state that he did not give Dr. Seto's opinions controlling weight. However, given the ALJ's discussion and analysis, the Court declines to reverse on this basis.[50]

---

[49] *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("[T]he ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion, we will not reverse on this ground."); *see also Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (2015) (rejecting the claimant's argument that the ALJ erred in "failing to state explicitly whether or not he intended to give controlling weight to her physicians' opinions before proceeding to find that they were entitled to no weight"); *Payton v. Astrue*, 480 F. App'x 465, 469 (10th Cir. 2012) (holding that although "an explicit statement" that the ALJ had discounted a treating physician's opinion "would be preferable," the ALJ stated that she considered the medical evidence in accordance with the applicable ruling, so the court took the ALJ at her word).

[50] *See Billings v. Colvin*, 2014 WL 5528683, at *6 (D. Kan. Nov. 3, 2014) (concluding that the ALJ's failure to give the exact weight given to the treating physician's opinion did not preclude the court from conducting a meaningful review of the ALJ's decision).

In any event, the ALJ's omission is irrelevant in this case. Dr. Seto's opinion was not pertinent to the question before the ALJ: whether Van Norman was disabled before her date last insured. As noted above, Dr. Seto opined that Van Norman's limitations began in December 2013. This is two months after her date last insured, which was September 2013.[51] Thus, even if the ALJ did not adequately consider Dr. Seto's opinion, no reasonable administrative factfinder could have credited Dr. Seto's opinion.[52] Thus, the Court declines to find the ALJ's analysis of Dr. Seto's opinion as a basis for remanding this case.

**D.     Van Norman's Impairments**

Van Norman's final argument is that the ALJ did not consider all of her impairments in assessing her RFC. At step two of the process, the ALJ must consider whether the claimant has a medically determinable impairment or combination of impairments that are severe.[53] At step four, the ALJ must consider the combined effect of all of the claimant's impairments, whether or not those impairments are designated as severe, in assessing the RFC.[54] When assessing the RFC, however, the ALJ does not have to consider the effects of those impairments that are not medically determinable.[55]

---

[51] *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2008) (stating that eligibility for disability insurance benefits requires the claimant to prove disability on or before her date last insured).

[52] *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that it may "be appropriate to supply a missing dipositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

[53] 20 C.F.R. § 416.920(a)(4)(ii).

[54] 20 C.F.R. § 416.923(c); *see also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ").

[55] 20 C.F.R. § 404.1521; *see also Gibbons v. Barnhart*, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments") (citation omitted).

Here, the ALJ determined at step two that Van Norman has the severe impairments of degenerative disc disease, status-post lumbar surgery in 2004, and chronic obstructive pulmonary disease. The ALJ makes no mention of any other impairments in his decision. Van Norman maintains, and the Commissioner does not dispute, that the record contains evidence of the additional impairments of knee and hip osteoarthritis, degenerative neck pain, and nebulizer use. Because the ALJ makes no mention of the impairments in his decision, it is impossible to determine whether he found them medically determinable. And if these impairments are medically determinable, they must be considered in the RFC assessment.[56] Therefore, the Court remands this case for the Commissioner to determine whether the additional impairments identified by Van Norman are medically determinable, and if so whether they are severe or not severe.

## IV. Conclusion

The ALJ's RFC assessment is supported by substantial evidence in the record with regard to his analysis of Van Norman's credibility and Dr. Seto's opinion. In addition, the ALJ's failure to conduct a function-by-function analysis is harmless and does not warrant remand for further analysis. The ALJ did not, however, address Van Norman's additional impairments found in the record when formulating her RFC. Therefore, the Court reverses and remands for further consideration of these impairments as set forth above.

---

[56] The Court recognizes that some of these impairments may have minimal, if any, effect on the RFC.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **REVERSED** and that judgement shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent therewith.

**IT IS SO ORDERED**.

Dated this 19th day of April, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE